

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

DMP:DKK/JMH
F.#2014R01413

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 8, 2020

By Email and ECF

The Honorable William F. Kuntz, II
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Azizjon Rakhmatov
              Criminal Docket No. 15-95 (WFK)

Dear Judge Kuntz:

      The government respectfully requests leave of the Court to file this supplemental opposition to certain arguments raised by the above-referenced defendant in his reply brief in anticipation of sentencing. See ECF No. 479 (Nov. 27, 2020) (the "Reply"). The 33-page Reply largely rehashes arguments raised in the defendant's principal sentencing submission, and—as to those arguments—the government does not submit further response but instead rests on its sentencing submission. See ECF No. 475 (Oct. 16, 2020). However, the Reply also advances several new arguments not raised in the defendant's principal sentencing submission, which new arguments the government addresses below. The government respectfully submits that this short supplement is necessary to respond to the new arguments raised in the Reply.

I.      The Terrorism Enhancement Applies to Rakhmatov's Conduct

      A.      The Defendant's Allocution and Stipulations in His Plea Agreement Establish the Terms of the Enhancement

      The Reply focuses most of its efforts in opposition to the application of the terrorism enhancement pursuant to U.S.S.G. § 3A1.4 ("the Enhancement"). As set forth in the government's initial filing, the Enhancement is appropriate, and none of the new arguments raised in the Reply show otherwise.

      First, the thrust of the Reply is that the sentencing record may not establish that Rakhmatov himself was an ISIS terrorist or a vocal ISIS supporter. But those are not

things the government must prove for the Enhancement to apply.  Here, the undisputed facts of the plea agreement establish that Rakhmatov "provided financial support for Akhror Saidakhmetov to travel to Syria to fight on behalf of [ISIS]," Plea Agreement ¶ 3(a); that Rakhmatov did so, at least in part, so that Saidakhmetov would fight "on behalf of ISIS against the government of Bashir al Assad", id. at ¶ 3(b); that Rakhmatov discussed with Habibov the "need to purchase 'a pencil,' referring to a firearm" for Saidakhmetov, id. at ¶ 3(d); and that Rakhmatov gave money "intending to fund Saidakhmetov's travel to and expenses in Syria to fight on behalf of ISIS", id. at ¶ 3(e).  There is no dispute that ISIS was and is a foreign terrorist organization as defined by statute and as designated by the United States Secretary of State.[1]  And the government does not understand the defense to be contending that Rakhmatov was unaware of ISIS's brutal, bloody campaign of terror: indeed, in his allocution, Rakhmatov stated "I gave money that I knew would be used to send someone to fight with ISIS terrorist group in Syria," and that he knew "that [ISIS] was a terrorist group."  See Tr. of Plea, ECF No. 442, at 44, 46 (Aug. 15, 2019) (emphasis added).[2]

       These undisputed facts aggregate to an application of the Enhancement.  Providing a fighter to ISIS is providing a fighter to ISIS's terrorist campaign, and Rakhmatov concedes that one of his objectives was to overthrow a foreign government—the Assad regime.  Even if ISIS was solely dedicated to the overthrow of the Assad regime—which it was not—Rakhmatov's provision of a fighter to a group pursuing that objective by means of violence should settle the matter.

       Second, the Reply cites no authority for the proposition that only the United States government can be the target of the terrorist activity for the Enhancement to apply.  See Reply at 15-16.  That reading of the statute is in tension with the global and extraterritorial scope of U.S. counterterrorism statutes, and contrary to settled law.  See United States v. Khan, 938 F.3d 713, 718 (5th Cir. 2019).

       Third, the Reply also contends that, because Rakhmatov was engaged in some kind of "defensive fight" against Assad, the Enhancement should not apply.  See Reply at 11.  But ISIS was not engaged in a "defensive fight."  ISIS was engaged in a terrorist campaign against not only Assad, but also against the people and government of Iraq, as evidenced by

---

[1] The Reply states in error that the Attorney General of the United States makes designations of foreign terrorist organizations ("FTOs"), whereas in fact the Secretary of State does so, in consultation with the Attorney General and the Secretary of the Treasury.  See Reply at 2; cf. 8 U.S.C. § 1189.

[2] The Reply also characterizes the government's argument as allowing the Enhancement to apply even to the sanctioned 2013 visit with anti-Assad rebels by the late Senator John McCain, or to other possible anti-Assad action by the President of the United States.  See Reply at 11.  The law does not, of course, make such coordinated government actions crimes, and none of these actions involved ISIS or any designated foreign terrorist organization.

its title and its territorial aims. ISIS was not defending Iraq or al-Sham (Syria)—it was attempting to conquer them and to establish an Islamic State in their place.

Fourth, the Reply mischaracterizes several aspects of Habibov's trial testimony. As an initial matter, the Reply suggests that Habibov absolved Rakhmatov of support for ISIS. See Reply at 3 ("Habibov . . . did not name Mr. Rakhmatov as someone who agreed with ISIS terrorist acts[.]"); id. at 26-27; id. at Ex. 1 (transcript of Habibov's trial testimony). But Habibov did not testify at Kasimov's trial about Rakhmatov's views because Rakhmatov was not on trial. As Rakhmatov chose to plead guilty prior to trial, the government had no obligation or need to elicit Habibov's testimony against a defendant who was not before the jury.

The Reply also mischaracterizes other aspects of Habibov's testimony. Habibov did not testify that contributors to the "Tea Party" were unaware that their contributions were funding ISIS. Compare Reply Mem. at 3 with, e.g., Reply, Ex. 1, at 25 (Habibov's testimony that four members of the Tea Party had gone to Syria to fight and that members of the group discussed supporting ISIS openly in person).[3] Habibov also did not state that the purpose of the "tea party" was "social aid." Compare Reply Mem. at 27, with, e.g., Ex. 1 at 174 (Habibov's testimony that the "goals" of the "tea party" were "[r]aising funds and sending people to go to Syria to fight. And providing them with every means. If they need uniforms. Food. And their family as well, whoever left their family behind, and helping them as well financially[.]"), and id. at 24 (Habibov's testimony that he was a member of the "tea party," a group of people who were raising money to help fighters in Syria).

II.     A Sentence of Fifteen Years Is Warranted Under the Section 3553(a) Factors

   A.    The Reply's Comparison to Other E.D.N.Y. Cases Does Not Help Rakhmatov

The Reply argues that consideration of the Section 3553(a) factors counsel in favor of a lesser sentence for Rakhmatov than was imposed on the defendants in the Saleh, Mumuni, and Rabbani counterterrorism prosecutions. See generally United States v. Munther Saleh and Fareed Mumuni, No. 15-CR-393 (MKB) (E.D.N.Y.) (hereafter "Saleh"); rev'd in part sub nom United States v. Mumuni, 946 F.3d 97 (2d Cir. 2019) (vacating the lenient 18-year sentence imposed on Mumuni as substantively unreasonable and remanding for resentencing); see also Reply at 6, 21-22. This argument is unpersuasive.

The Saleh and Mumuni cases related to a conspiracy to commit a violent terrorist attack. When their conspiracy was disrupted by law enforcement, conspirators Saleh and Rabbani charged an FBI surveillance vehicle while possessing knives, neither of

---

[3]     Rather, Habibov testified that some individuals who gave money were unaware that the funds were being used to support ISIS, but did not identify Rakhmatov as one of the individuals who lacked such knowledge. Indeed, Rakhmatov stipulated in his plea agreement that he knew that the money he gave for Saidakhmetov was for ISIS.

3

which was brandished.  See generally Saleh, Gov't Sentencing Mem., ECF No. 144, at 2 (Jan. 31, 2018) (Saleh).  During a separate incident, co-conspirator Fareed Mumuni stabbed a federal agent multiple times with a kitchen knife while the agent was executing a search warrant of Mumuni's residence.  See generally Saleh, Gov't Sentencing Mem., ECF No. 134, at 13 (Jan. 12, 2018).

Both Mumuni and Saleh were convicted of providing material support to ISIS and assaulting federal agents; Mumuni was also convicted of attempted murder of a federal agent.  They faced advisory Guidelines sentences of 85 and 53 years of imprisonment, respectively, and the government sought a Guidelines sentence for both.  See generally Saleh, ECF Nos. 134, 144, 164 (Gov't Sentencing Mems.).

As the government noted in its earlier submission, co-conspirator Imran Rabbani—a 17-year old at the time of his offense conduct—was not convicted of any material support offenses, nor attempted murder, nor assault upon a federal agent; he was convicted only of conspiring to impede federal officers.  See Gov't Sentencing Mem., ECF No. 475, at 25.  Accordingly, he faced a Guidelines range of 30-37 months of imprisonment.  The government requested, and the Court imposed, a Guidelines sentence.

In other words, the government's approach to the sentencing of this defendant is no different from its approach for defendants Mumuni, Saleh, and Rabbani.  The government sought a Guidelines sentence for each of those defendants, just as it does here.

    B.    <u>The Court Should Reject the Reply's Efforts to Paint Rakhmatov as In Habibov's Thrall</u>

Despite the stipulations of fact in the defendant's plea agreement, the Reply argues that the defendant should receive a reduced sentence because his conduct was actually driven by a desire to "satisfy Habibov."  Reply at 9.  According to the Reply, Rakhmatov was "indebted to Habibov," upon whom Rakhmatov had "relied . . . for work" and "advice," based upon Habibov's status as an "established businessman," id. at 23; their relationship was akin to that of mentor-mentee.  Id. at 28.  The Court should reject this rewriting of history.

Rakhmatov was 28 years old in February 2015.  Habibov was 29 years old and turned 30 that month.  Rakhmatov had been in the United States for nearly four years by February 2015.  Rakhmatov arrived in the United States with a college degree in engineering he had earned in Uzbekistan.  PSR ¶ 61.  And Rakhmatov resided in Connecticut; Habibov, in Brooklyn and then in Florida.  The notion that Rakhmatov's desire to please Habibov, a slightly older man living in another city, was so all-encompassing that it should meaningfully mitigate Rakhmatov's sentence does not survive the thinnest scrutiny.

Moreover, a cursory review of the key communications between Habibov and Rakhmatov reveals the flaws in the defendant's argument.  Most notable, in the conversation on February 23, 2015, it is Rakhmatov who twice cautions Habibov to be more discreet in his language.  See Gov't Sentencing Mem. at 6-7 ("Please be more accurate [cautious] . . .";

4

"[P]lease don't talk too much now, brother."). It is in this conversation that Rakhmatov agreed to transfer at least $200, for the express purpose of acquiring a firearm for Saidakhmetov, to co-conspirator Akmal Zakirov. Rakhmatov also said that he would try to add more, and ultimately transferred $400. There is no suggestion of any debt owed Habibov, whether measured in funds or filial fealty.

In an effort to find some evidence of debt, the defendant points to the transcripts submitted as Exhibit 5 to the Reply, in which Habibov and Rakhmatov discuss purchases of iPhones. But those conversations do not establish that Rakhmatov owed Habibov; they are just as amenable to a reading that Rakhmatov is in search of a cheap iPhone 6, and that Habibov has not yet found one. Moreover, even if these transcripts did establish some kind of debt, they undermine the defense's basic premise that Rakhmatov was in thrall to Habibov, because Rakhmatov holds firm that he wants an iPhone 6 and will not accept Habibov's attempted sale of an iPhone 5s as an alternative. See Reply, Ex. 5, at 11-12. If Rakhmatov were so reliant upon Habibov, one expects he would have tried to satisfy Habibov's repeated wishes by accepting the 5s as an alternative. The defense would therefore have the Court believe that Rakhmatov stands his ground against Habibov on the banalities of iPhone models, but is overcome by his reliance upon Habibov a week later on the graver subject of sending a man halfway around the world to serve ISIS and to arm him for that service. The Court should reject this attempt.

III.  Conclusion

For the reasons set forth above and in its earlier filing, the government respectfully requests that the Court impose a Guidelines' sentence of 180 months.

                              Respectfully submitted,

                              SETH D. DUCHARME
                              Acting United States Attorney

By:   /s/ J. Matthew Haggans
       Douglas M. Pravda
       David K. Kessler
       J. Matthew Haggans
       Assistant U.S. Attorneys
       (718) 254-7000

cc:    Clerk of Court (WFK) (By ECF)
        Counsel of Record (By ECF)