UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,     :
     :
     v.     :   **MEMORANDUM & ORDER**
     :   15-CR-95-6 (WFK)
AZIZJON RAKHMATOV,     :
     :
     Defendant.     :
-------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:** On August 15, 2019, Azizjon Rakhmatov ("Defendant") pled guilty to Count One of the Third Superseding Indictment, charging him with Conspiracy to Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B. On January 14, 2021, this Court sentenced Defendant to 150 months of incarceration and a lifetime term of supervised release. ECF No. 485. On November 17, 2022, the U.S. Court of Appeals for the Second Circuit issued a mandate affirming the Court's judgment of conviction but remanding the case for re-sentencing. The Court now re-sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 150 months of incarceration, two (2) years of supervised release, and payment of a $100.00 special assessment.

### BACKGROUND

On May 9, 2016, the Government filed a Third Superseding Indictment against

Defendant and his co-Defendants, charging him with: (1) Conspiracy to Provide Material

Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B; (2) Attempt to

Provide Material Support to a Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B;

and (3) Conspiracy to Use a Firearm, in violation of 18 U.S.C. § 924(o). Superseding

Indictment, ECF No. 135. On August 15, 2019, Defendant pled guilty to Count One of the

Indictment. ECF Nos. 367–68.

On January 14, 2021, this Court sentenced Defendant to 150 months of incarceration to

be followed by a lifetime term of supervised release. ECF No. 485. On January 26, 2021,

Defendant appealed his conviction and sentence. ECF No. 494.

On November 17, 2021, the U.S. Court of Appeals for the Second Circuit affirmed Defendant's conviction but remanded the case to this Court for further proceedings concerning the lifetime term of supervised release and the remaining special conditions which survived Defendant's appeal. *See United States v. Rakhmatov*, 21-CR-151 (2d Cir. Nov. 17, 2022) (summary order). In accordance with this Mandate, the Court now sentences the Defendant and sets forth its reasons for Defendant's sentence using the rubric of the § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

The Court first addresses the Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2) before it addresses the proposed special conditions of supervised release.

## I. Sentencing

### A. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. In addition to the seven factors listed in 18 U.S.C. § 3553(a), a sentencing court must consider the Sentencing Guidelines. However, the Guidelines are merely advisory in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 264 (2005).

Nevertheless, the sentencing range recommended by the Sentencing Guidelines is the "starting point and the initial benchmark" in evaluating a criminal sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). If a district court chooses to impose a sentence outside of the Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with

2

specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.* "The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).

This Court has considered the applicable Guidelines range as well as the seven factors listed in Section 3553(a). *United States v. Crosby*, 397 F.3d 103, 112 (2d Cir. 2005). It now addresses each in turn.

**B. Analysis**

Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. This Court addresses each in turn.

1. **The History and Characteristics of the Defendant and the Nature and Circumstances of the Offense**

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

a. Nature and Circumstances of the Offense

In February 2015, Defendant assisted his co-Defendants in raising money to support co-Defendant Akhror Saidakhmetov's travel from the United States to Syria so that Saidakhmetov could join the Islamic State of Iraq and Syria ("ISIS"), a jihadist militant organization and designated foreign terrorist organization ("FTO"). Presentence Investigation Report ("PSR"), ECF No. 448, ¶¶ 3–4, 18–23. Defendant agreed to contribute his own funds towards Saidakhmetov's travel and the purchase of a firearm and to further assist in raising funds from

others. *Id.* ¶¶ 19–22.  Defendant contributed $400.00 to fund Saidakhmetov's travel and

expenses in Syria to fight on behalf of ISIS.  *Id.* ¶ 22.

      b.    Family and Personal Background

Defendant was born on December 28, 1986 in Tashkent, Uzbekistan to the marital union

of Shokir Rakhmatov and Nodira Rakhmatov.  *Id.* ¶ 51.  His parents reside together in

Uzbekistan.  *Id.*  His father is a truck driver and suffers from coronary disease.  *Id.*  His mother is

a homemaker and suffers from liver disease and a spinal condition.  *Id.*  Defendant's parents are

aware of his arrest and conviction and remain supportive of him.  *Id.*

Defendant was reared by both parents under lower-income circumstances in Uzbekistan.

*Id.* ¶ 51.  He recalled having a childhood full of good memories and devoid of any forms of

abuse.  *Id.*  Defendant has a younger brother, Alisher Rakhmatov, who resides in Uzbekistan, is

aware of Defendant's arrest and conviction and remains supportive of him.  *Id.*

In 2009, Defendant married Feruza Baymatova in Uzbekistan.  *Id.* ¶ 52.  Although their

marriage was brief, the two share a daughter, Defendant's eldest, who presently resides in

Uzbekistan with her mother.  *Id.*  Defendant's ex-wife has not remained in contact with

Defendant.  *Id.*  However, Defendant reports having supported his daughter financially, prior to

his instant arrest.  *Id.*

In March 2011, Defendant left Uzbekistan and traveled to the United States on a tourist

visa.  *Id.* ¶ 53.  Defendant first lived in New York City for several months before he relocated to

Syracuse, New York, and then to New Britain, Connecticut in 2013.  *Id.* ¶¶ 53, 55.  Immigration

and Customs Enforcement ("ICE") records indicate Defendant is not a legal resident of the

United States and is currently subject to removal proceedings.  *Id.* ¶ 53.

In 2012, Defendant began dating Abibata Kone, whom he later married on June 3, 2016, in Syracuse, New York. *Id.* ¶ 54. Defendant and Kone have two young children together. *Id.* Both of whom are healthy and reside with their mother. *Id.* However, since Defendant's arrest, Defendant's wife and younger children have experienced significant financial hardship. *Id.* Nevertheless, Defendant's wife is aware of Defendant's arrest and conviction and remains supportive of him. *Id.*

     c.     <u>Educational and Employment History</u>

Defendant obtained a college degree in engineering while in Uzbekistan. *Id.* ¶ 61. He is fluent is Uzbek but speaks little English. *Id.* ¶ 62. Beginning in 2013, Defendant worked as a self-employed car salesman in Connecticut, earning $4,000.00 in gross profits each month. *Id.* ¶ 64. From 2012 until 2013, Defendant was a salesperson at a mall kiosk in Syracuse, New York. *Id.* ¶ 65. From 2004 until 2012, Defendant operated a jewelry store in Uzbekistan. *Id.*

     d.     <u>Prior Convictions</u>

Defendant has no prior criminal convictions apart from the instant offense. *Id.* ¶ 44.

     e.     <u>Medical and Mental Health</u>

Defendant lives with cavities, recurring sinus infections, as well as chronic joint pain in the legs and shoulders related to his history of rheumatism. *Id.* ¶ 58. With respect to his mental health, Defendant reports suffering from fear his wife will not be able to cope financially in his absence. *Id.* ¶ 59.

     f.     <u>Substance Abuse</u>

Defendant does not have a history of alcohol or drug abuse. *Id.* ¶ 60.

## 2. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense. Defendant, together with his co-Defendants, conspired to fund Defendant Saidakhmetov's travel to Syria, where he planned to join and fight on behalf of ISIS. Defendant Saidakhmetov, who professed himself a supporter and sympathizer of ISIS, could have furthered ISIS's international campaign of terror. The Court's sentence reflects this; it reflects the serious nature of Defendant's offense and seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity. However, the Court's sentence also appropriately reflects Defendant's level of involvement and contributions to the conspiracy.

## 3. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Third Superseding Indictment, charging a violation of 18 U.S.C. § 2339b. ECF Nos. 368–69. This statute carries a maximum term of imprisonment of fifteen years and a maximum term of supervised release of life. 18 U.S.C. § 2339B (effective Dec. 1, 2009, through June 1, 2015); *id.* § 3583(j). Defendant also faces a

maximum fine of $250,000.00, *id.* § 3571(b)(3), a mandatory special assessment of $100.00, *id.*
§ 3013, restitution, *id.* §§ 3663 and 3664, and removal.

### 4. The Kinds of Sentence and the Sentencing Range Established for
### Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the
sentencing range established for . . . the applicable category of offense committed by the
applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

For a violation of 18 U.S.C. § 2339B the applicable Guideline is section 2M5.3(a).
United States Sentencing Commission, Guidelines Manual ("USSG") § 2M5.3(a). The base
offense level here is 26. *Id.* § 2M5.3(a). As the instant offense involved the provision of
material support with the intent, knowledge, or reason to believe such support was to be used to
assist in the commission of a violent act, the offense level is increased by two (2) levels. *Id.*
§ 2M5.3(b)(1)(E); PSR ¶ 34; Gov't Sentencing Mem. at 10, ECF No. 475 ("Gov't Mem.").
Further, as the offense is a felony intended to promote a crime of terrorism, the offense level is
increased by twelve (12) additional levels. USSG § 3A1.4(b); PSR ¶ 35; Gov't Mem. at 10.
This results in a subtotal adjusted offense level of forty (40).

Defendant has demonstrated acceptance of responsibility for the offense. Accordingly,
the offense level is decreased by two (2) levels. USSG § 3E1.1(a). Because the Government
was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense
level is decreased by one (1) additional level. *Id.* § 3E1.1(b). This calculation yields a total
offense level of thirty-seven (37).

Probation and the Government agree with this calculation. PSR ¶¶ 33–42; Gov't Mem. at
10. Defendant, on the other hand, argues the Court should disregard the adjustment under USSG

§§ 2M5.3(b)(1)(E) and 3A1.4(b) as he claims section 3A1.4(b) is unconstitutional and unproven and to count both sections would "be double counting." Def.'s First Obj. to PSR at 1–11, ECF No. 474 ("Def. 1st Obj."). Defendant suggests instead that the Court should use only the base offense level without any enhancements, which would result in an offense level of 26. Def. 1st Obj. at 19, 24, 41.

The parties also disagree with respect to Defendant's criminal history category. Probation and the Government calculate Defendant's criminal history category is six (VI), pursuant to USSG § 3A1.4(b). PSR ¶ 45; Gov't Mem. at 10. Defendant disagrees and argues USSG § 3A1.4(b) is both inapplicable and unconstitutional. Def. 1st Obj. at 1. Instead, Defendant argues his criminal history category is one (I) as he has no criminal convictions apart from the instant offense. *Id.* at 10.

In accordance with Probation and the Government's calculation, a total offense level of thirty-seven (37) and a criminal history category of six (VI) yields a Guidelines term of imprisonment of 360 months to life. USSG Ch. 5, Part A. However, because the maximum sentence authorized by the statute is 15 years, the restricted Guidelines term of imprisonment is 180 months here. USSG § 5G1.1(a). Additionally, the Guidelines also recommend a fine of between $40,000.00 and $250,000.00. *Id.* § 5E1.2(c)(3), (h)(1).

In accordance with Defendant's calculation, a total offense level of twenty-six (26) and a criminal history category of one (I) yields a Guidelines term of imprisonment range of sixty-three (63) to seventy-eight (78) months. *Id.* Ch. 5, Part A. And the Guidelines recommend a fine of between $25,000.00 and $250,000.00. *Id.* § 5E1.2(c)(3).

For both calculated offense levels, the Guidelines further recommend a term of supervised release between two years and life, *id.* § 5D1.2(a)(1), and advise Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

The Second Circuit instructed this Court to determine upon remand (1) the appropriate length of Defendant's term of supervised release and (2) whether seven of the special conditions the Court originally imposed upon Defendant are appropriate in this case. Accordingly, the Court proceeds to consider the issues mandated by the Circuit.

The parties disagree as to Defendant's term of supervised release. As it did in its original sentencing submissions, Probation continues to advocate for the imposition of a lifetime term of supervised release. *See* Second Addendum to the Presentence Investigation Report ("2d Add. PSR"), ECF No. 567. Specifically, Probation argues "[i]n the event [Defendant] is not deported after serving his sentence, the lifetime supervised release term will enable the Probation Department to remain vigilant in holding him accountable for his actions and to ensure that he does not reengage in such criminal activity that may threaten the safety of the community." *Id.* at 1.

In contrast, defense counsel recommends Defendant receive no term of supervised release, or, in the event the Court finds a term of supervised release appropriate, the imposition of no more than two years' supervised release. *See generally* Def. Updated Sentencing Mem. ("Def. Updated Mem."), ECF No. ECF No. 571. Specifically, defense counsel argues the Government has not presented a satisfactory rationale to explain why Defendant should receive a lengthier term of supervised release than co-Defendants Akhror Saidakhmetov, Abdurasul Juraboev, and Abror Habibov.

Finally, the Government argues a supervised release term of five (5) years is appropriate in this case. *See generally* Gov't Updated Sentencing Mem. ("Gov. Updated Mem."). The Government claims a lifetime term of supervised release is unnecessary considering the circumstances of "[D]efendant's offense and his history and characteristics, as well as the terms of supervised release imposed on other defendants who are part of the same conspiracy." *Id.* at 3. However, the Government qualifies that "[g]iven the defendant's serious conduct and lengthy term of imprisonment, he should not be released with no term of supervised release, which would mean that there is no mechanism in place for the Court to protect the public from further crimes of the defendant, to deter the defendant from committing such further crimes, and to provide assistance for the defendant's re-entry into society upon his release." Gov. Supp. Mem. at 2.

In response to defense counsel's arguments regarding the supervised release terms imposed upon Defendant's co-Defendants Saidakhmetov, Juraboev, and Habibov, the Government notes the circumstances underlying those cases are dissimilar to the instant case. *Id.* For example, the Government did not seek supervised release for co-Defendants Saidakhmetov and Juraboev because it anticipated the deportation of those defendants following the completion of their sentences. *Id.* Furthermore, Defendant Habibov, who was sentenced to a term of supervised release of two years, "repeatedly met with the government as part of his efforts to cooperate" and ultimately "testified at multiple trials." *Id.* at 3. In sum, the Government argues a term of supervised release of five years is appropriate for this Defendant considering the facts of this particular case.

**5.  Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy

statement . . . issued by the Sentencing Commission."  18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statement here.

Finding none on its own, the Court proceeds to the next section 3553 factor.

**6.  The Need to Avoid Unwarranted Sentence Disparities**

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of

similar conduct."  18 U.S.C. § 3553(a)(6).  For the reasons stated in this Memorandum and

Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted

sentence disparities.

**7.  The Need to Provide Restitution**

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to

provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).  This factor is not

applicable to Defendant's case.

**II.    Special Conditions of Release Analysis**

The Court next addresses Probation's proposed special conditions of release.

**A.  Legal Standard**

District courts have broad discretion in imposing conditions of supervised release.  *See*

*United States v. Betts*, 886 F.3d 198, 202 (2d Cir. 2018); *see also United States v. Belfon*, No. 21-

1444, 2023 WL 2342688, at *2 (2d Cir. Mar. 3, 2023).  The Court must follow the statutory

procedure set forth in 18 U.S.C. § 3583(d) when imposing special conditions of supervised

release.  Special conditions of supervised release must: (1) be "reasonably related" to certain

11

statutory factors set forth in § 3553(a)—specifically, the nature and characteristics of the offense and the history and characteristics of the defendant, § 3553(a)(1), the need to afford adequate deterrence to criminal conduct, § 3553(a)(2)(B), the need to protect the public from further crimes of the defendant, § 3553(a)(2)(C), and the need to provide the defendant with necessary training or correctional treatment, § 3553(a)(2)(D); (2) "involve[] no greater deprivation of liberty than is reasonably necessary" to implement the statutory purposes of sentencing; and (3) be consistent with pertinent policy statements issued by the Sentencing Commission. 18 U.S.C. § 3583(d); *see also United States v. Myers*, 426 F.3d 117, 124 (2d Cir. 2005).

### B. Analysis

Probation originally proposed eleven special conditions of release to follow Defendant's sentence:

Condition 1: "[D]efendant shall submit to a mental health treatment evaluation and, if deemed necessary, participate in a mental health treatment program. . . ."

Condition 2: "[D]efendant shall comply with the medication regimen prescribed by a licensed psychiatrist. . . ."

Condition 3: "[D]efendant shall not associate in person, through mail, electronic mail, internet, social networking, or telephone with any individual with an affiliation to any terrorist organization, organized crime groups, gangs, or any criminal enterprise or terrorist enterprise. . . ."

Condition 4: "[D]efendant shall participate in a polygraph examination(s). . . ."

Condition 5: "[D]efendant shall cooperate with the United States Probation Department's Computer and Internet Monitoring program. . . ."

Condition 6: "[D]efendant shall report to the Probation Department any and all

12

electronic communications service accounts (as defined in 18 U.S.C.§ 2510(15))
used for user-communications. . ."

Condition 7: "[D]efendant agrees that the United States Probation Department may,
in its discretion, share information obtained during its monitoring of the defendant's
phone. . . ."

Condition 8: "[D]efendant agrees to monitoring by the Probation Department by
location monitoring and/or global positioning systems (GPS). . . ."

Condition 9: "[D]efendant shall submit his person, property, house, residence,
vehicle, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic
communications or data storage devices or media, or office, to a search. . . ."

Condition 10: "If removed, [D]efendant may not re-enter the United States
illegally."

Condition 11: "[D]efendant shall cooperate with and abide by all instructions of
immigration authorities."

*See generally* 2d Add. PSR.  The Second Circuit affirmed Conditions 3 (association condition)
and 9 (search condition). *See United States v. Rakhmatov*, 21-CR-151 (2d Cir. Nov. 17, 2022)
(summary order).  Furthermore, Defendant did not appeal Conditions 10 (removal) and 11
(immigration procedures).   Accordingly, Conditions 3, 9, 10, and 11 will remain in place.

Therefore, seven conditions are presently outstanding: Condition 1 (mental health
evaluation and medication), Condition 2 (mental health evaluation and medication), Condition 4
(polygraph examination), Condition 5 (computer and internet monitoring), Condition 6
(computer and internet monitoring), Condition 7 (computer and internet monitoring), and
Condition 8 (location monitoring).  The Court addresses the proposed special conditions in turn.

### 1. Mental Health Evaluation and Medication (Conditions 1 & 2)

Conditions 1 and 2 relate to mental health evaluation and treatment.  Condition 1 states

"[t]he defendant shall submit to a mental health treatment evaluation and, if deemed necessary,

participate in a mental health treatment program as selected by the Probation Department. The

defendant shall contribute to the cost of such services rendered and/or any psychotropic

medications prescribed to the degree he is reasonably able, and shall cooperate in securing any

applicable third-party payment. The defendant shall disclose all financial information and

documents to the Probation Department to assess his ability to pay." 2d Add. PSR at 2.

Condition 2 states: "[t]he defendant shall comply with the medication regimen prescribed by a

licensed psychiatrist approved by the Probation Department. The defendant shall contribute to

the cost of such services rendered and any psychotropic medications prescribed via co-payment

or full payment in an amount to be determined by the Probation Department, based upon the

defendant's ability to pay and/or the availability of third-party payment." *Id.*

In support of these conditions, Probation argues "an assessment into the defendant's

thought processes and overall mental health is critical to formulating a supervision plan that

addresses not only any risks identified in his cognitions, but also will provide support and a

platform for him to explore his cognitions while learning a skill set that will assist him in altering

his choices." *Id.*  The Government initially agreed with Probation's position, arguing "it is

reasonable to require a mental health evaluation upon release from custody for the defendant,

who supported a brutal foreign terrorist organization with no misgivings about doing so." Gov.

Updated Mem. at 6.  However, the Government subsequently amended this position and no

longer requests that the Court impose either Conditions 1 or 2. Gov't Supplemental Sentencing

Mem. ("Gov. Supp. Mem."), ECF No. 575 ("After reviewing the defendant's May 26, 2023

14

opposition, further considering the case law and the underlying facts of the defendant's conduct

and history and characteristics, among other relevant factors, the government does not believe

that the special conditions relating to mental health evaluation and treatment are necessary.").

Defendant also opposes the imposition of Conditions 1 and 2, arguing these conditions

are unnecessary and inappropriate considering "[t]here are no facts or patterns of behavior in

[Defendant's] history and background of any mental aberration. Def. Updated. Mem. at 10.

Upon careful consideration of the parties' arguments, the Court finds Conditions 1 and 2

are not warranted given the lack of evidence in the record suggesting Defendant suffers from any

mental health issues such that treatment or medication would be appropriate in this case.

Therefore, the Court declines to impose Conditions 1 and 2.

### 2. Polygraph Examination (Condition 4)

Condition 4 requires Defendant to "participate in a polygraph examination(s) to obtain

information necessary for risk management and correctional treatment." 2d Add. PSR at 2.

According to Probation, this condition is necessary as it will "enable Probation to gauge the

defendant's veracity regarding his compliance with the remaining conditions of supervision." *Id.*

The Government echoes this reasoning  and emphasizes "[t]he Second Circuit has

repeatedly affirmed a similar polygraph condition as helping to further the supervised release

process and as not running afoul of the Constitution." *Id.* (citing *United States v. Boles*, 914 F.3d

95, 112 (2d Cir.), *cert. denied*, 139 S. Ct. 2659 (2019)).

Defendant argues against the imposition of this condition, stating the use of polygraph

testing could subject Defendant to a return to prison and therefore violates his Fifth Amendment

right against self-incrimination. Def. Updated Mem. at 11.  Moreover, defense counsel argues

the circumstances involved in *Boles*, which was case involving possession of child pornography, are not applicable to this case. *Id.*

Having considered the parties' positions on this condition, the Court finds Condition 4 is not warranted. While they are sometimes approved for salutary purposes, polygraph examination conditions are commonly found appropriate for defendants who struggle to confront the root of their criminal behavior, such as in cases involving sex offenders. *See United States v. Porter*, 03-CR-0129 (CPS), 2008 WL 117839, at *7 (E.D.N.Y. Jan. 3, 2008) (Sifton, J.) (imposing a special condition requiring the defendant in a child pornography possession case to undergo polygraph examinations for the purpose of "encourag[ing] [the] offender to confront his motivations and behaviors," regardless of whether the statements defendant would make would be self-incriminating). In *United States v. Johnson*, the Second Circuit upheld the imposition of a polygraph condition upon a serial offender who apparently resisted honest "self-assessment" and who demonstrated an "antagonistic attitude" with "an inadequate level of accountability for his offenses." 446 F.3d 272, 278 (2d Cir. 2006). The Court does not have such concerns regarding this Defendant. Ultimately, the Court finds the § 3553(a) factors counsel against the imposition of Condition 4 and therefore the Court declines to impose this condition here.

### 3. Computer and Internet Monitoring (Conditions 5, 6, 7)

Conditions 5, 6, and 7 concern Defendant's computer and internet use. Condition 5 states "[t]he defendant shall cooperate with the United States Probation Department's Computer and Internet Monitoring program. Cooperation shall include, but not be limited to, identifying computer systems, Internet capable devices, and/or similar electronic devices the defendant has access to, and allowing the installation of monitoring software/hardware on said devices, at the defendant's expense. The defendant may be limited to possessing only one personal Internet

capable device, to facilitate the Probation Department's ability to effectively monitor his Internet related activities. The defendant shall also permit random examinations of said computer systems, Internet capable devices, and similar electronic devices, and related computer peripherals, such as CD's, under his control." 2d. Add. PSR at 3.

Condition 6 states "[t]he defendant shall report to the Probation Department any and all electronic communications service accounts (as defined in 18 U.S.C.§ 2510(15)) used for user-communications, dissemination and/or storage of digital media files (i.e. audio, video, images). This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts. The defendant shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action. Failure to provide accurate account information may be grounds for revocation of release. The defendant shall permit the Probation Department to access and search any account(s) using the defendant's credentials pursuant to this condition only when reasonable suspicion exists that the defendant has violated a condition of his supervision and that the account(s) to be searched contains evidence of this violation. Failure to submit to such a search may be grounds for revocation of release." *Id.*

Finally, Condition 7 states "[t]he defendant agrees that the United States Probation Department may, in its discretion, share information obtained during its monitoring of the defendant's phone, electronic, internet-capable, and/or computer systems, communications accounts, and devices with the Federal Bureau of Investigation (FBI) in order for the FBI to assist the Probation Department in evaluating such information as part of assessing the defendant's compliance with the terms of his supervision." *Id.* at 4.

Probation advocates for the imposition of each of these conditions, arguing they are warranted considering the use of text messages and social media in this case. *Id.* In addition, Probation argues the monitoring authorized by these conditions "can give early warning signs that can be addressed expeditiously with the defendant and act as a deterrence to engage with questionable social media platforms." *Id.* The Government agrees with Probation's stance and argues these conditions are justified by the manner of execution of Defendant's criminal conduct, which included the use of electronic devices and coded language. Gov. Updated Mem. at 4-5.

Defense counsel disagrees and argues  Defendant's use of electronic devices in relation to his offensive conduct was minor.  Namely, Defense counsel claims the relevant communications "did not involve a computer, were isolated in time and circumstance, and involved no danger to United States citizens or to law-abiding people anywhere." *Id.*

In light of Defendant's relatively limited use of electronic devices in the offensive conduct and considering the broad and burdensome nature of this condition, the Court concludes Conditions 5, 6, and 7 are not reasonably related to, *inter alia*, "the history and characteristics of the defendant" and accordingly removes these conditions from the terms of Defendant's supervised release.

### 4.  Location Monitoring (Condition 8)

Condition 8 states "[t]he defendant agrees to monitoring by the Probation Department by location monitoring and/or global positioning systems (GPS) (hereinafter collectively referred to as "monitoring"). Such monitoring may include home detention and/or a curfew. The defendant agrees to abide by all technology requirements and all location monitoring and/or GPS policies and procedures. The defendant must pay the costs of monitoring to the degree she is reasonably

able. The defendant must disclose all financial information and documents to the Probation

Department to assess his ability to pay." 2d Add. PSR at 4.

In response to concerns about the vagueness of this condition, Probation has proposed the

following modification: "[t]he participant shall be monitored by location monitoring for a period

90 days, using GPS technology. The participant is restricted to his residence every day from 7

p.m. to 7 a.m., or as directed by the supervising officer (curfew). The participant shall abide by

all technology requirements and shall pay all or part of the costs of participation in the location

monitoring program, as directed by the Court and supervising officer." *Id.*

Probation argues this condition "is intended to provide a structured environment and the

ability to monitor his whereabouts in the early stages of the supervision process, which is a

critical component in assessing both risk and compliance." *Id.* Furthermore, Probation claims

the condition will benefit Defendant by providing him with "the ability to account for his

whereabouts, which contributes to re-establishing himself in the community." *Id.*

The Government concurs with Probation's reasoning and emphasizes that the proposed

modification would limit the application of this condition to the first 90 days of Defendant's

supervision and thus lessens the impact on his liberty. Gov. Supp. Mem. at 7. Furthermore, the

Government argues this condition is "reasonably related to the supervised release goals of

deterrence and rehabilitation." *Id.*

On the other hand, Defense counsel argues this condition is not warranted. Def. Updated

Mem. at 16. Defense counsel claims "[a] twelve hour-a-day curfew and round the clock location

monitoring have no relation to Mr. Rakhmatov's offense of making a one-time money

contribution, during the confined period of one month, ten years prior to his release from prison,

especially given the entire rest of his law-abiding life without ideological commitment, behavior, or interest." *Id.*

Upon careful consideration of the parties' arguments, the Court determines Condition 8 is not warranted, finding it duplicate of Condition 9, which was upheld by the Second Circuit.

For the reasons set forth above, the Court concludes proposed Conditions 1, 2, 4, 5, 6, 7, and 8 are not reasonably related to the statutory factors set forth in this opinion, nor are they proportionate to the need to afford adequate deterrence to criminal conduct.

## CONCLUSION

A sentence of 150 months of incarceration, two (2) year(s) of supervised release, and a $100.00 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and any addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion. The Court imposes Conditions 3 and 9 as proposed by the Probation Department and affirmed by the Second Circuit. 2d Add. PSR. However, the Court declines to impose the remaining special conditions proposed by Probation, including Conditions 1, 2, 4, 5, 6, 7, and 8. *Id.*

SO ORDERED.

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: July 26, 2023
Brooklyn, New York